UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | No. 00 CR 50061-01 |
| | ) | Judge Philip G. Reinhard |
| STICKLE ENTERPRISES, LTD. | ) | |

## PLEA AGREEMENT

This Plea Agreement between the United States Attorney for the Northern District of Illinois,
SCOTT R. LASSAR, and the defendant, STICKLE ENTERPRISES, LTD., and its attorney, JAMES
P. DEVINE, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure, and is
governed in part by Rule 11(e)(1)(A) & (C), as more fully set forth in Paragraphs 16 and 18 below.

This Plea Agreement is entirely voluntary and represents the entire agreement between the
United States Attorney and defendant regarding defendant's criminal liability in the present case.

This Plea Agreement concerns criminal liability only, and nothing herein shall limit or in any
way waive or release any administrative or judicial civil claim, demand or cause of action,
whatsoever, of the United States or its agencies. Moreover, this Agreement is limited to the United
States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state
or local prosecuting, administrative or regulatory authorities except as expressly set forth in this
Agreement.

By this Plea Agreement, SCOTT R. LASSAR, United States Attorney for the Northern
District of Illinois, and the defendant, STICKLE ENTERPRISES, LTD., and its attorney, JAMES
P. DEVINE, have agreed upon the following:

1.     Defendant acknowledges that it has been charged in the superseding information in
this case with making false statements on a record required to be maintained by regulations enacted

by the United States Department of Labor ("DOL"), in violation of Title 29, United States Code, Section 666(g).

2.      The defendant's officers have read the charge against the defendant contained in the information, and that charge has been fully explained to the defendant's officers by the defendant's attorney.

3.      Defendant's officers fully understand the nature and elements of the crime with which the defendant has been charged.

4.      James P. Devine, attorney for defendant Stickle Enterprises, Ltd., represents that he has been authorized by a specific corporate resolution of defendant's board of directors to enter a plea of guilty on behalf of defendant to the charge contained in the superseding information in this case. This corporate resolution will be filed with the Court and made a part of the record in this case.

5.      Defendant will enter a voluntary plea of guilty to the charge contained in the superseding information in this case.

6.      Defendant will plead guilty because it is in fact guilty of the charge contained in the superseding information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

(a)      In general, defendant admits that on January 13, 1996, at Seward, Illinois, it knowingly made false statements and representations of material facts in a document that was required to be maintained by DOL regulations.

(b)      In particular, defendant admits that during the period of time relevant to the indictment in this case, it was an Iowa corporation which owned and operated various subsidiary corporations. Co-defendant Victor A. Randolph ("Randolph") was employed by the defendant in

2

the position of vice president. During the time period alleged in the indictment, Stickle performed grain salvage and clean-up operations for grain elevators that had experienced accidents, explosions, fires, etc.

Defendant further admits that during the period of time relevant to the indictment in this case, DOL regulations required employers to complete a confined space entry permit before any employee entered a grain bin, silo, or tank. DOL regulations also required that an employer take various safety precautions before any employee entered any grain bin, silo, or tank. DOL regulations further required that the employer maintain the confined space entry permit until after the work in the bin, silo, or tank was completed.

On December 17, 1995, an explosion occurred at a grain elevator owned by Fasco Mills Company ("Fasco") in Seward, Illinois. This explosion damaged Bin Number 14 ("Bin 14") and the corn inside Bin 14. Within a few days after the explosion, Fasco's insurance company hired defendant to salvage Bin 14 and the corn inside Bin 14. Randolph was assigned to oversee Stickle's salvage operation at Fasco.

On January 13, 1996, defendant was conducting the grain salvage at Bin 14. During the afternoon of January 13, 1996, an employee of defendant entered Bin 14. A confined space entry permit was not prepared prior to this employee's entry of Bin 14, as required by DOL regulations. In addition, various safety precautions required by the DOL regulations were not taken before the defendant's employee entered the bin.

A short time after he entered Bin 14, the defendant's employee collapsed due to inhalation of carbon monoxide. The Pecatonica Fire Department was called to respond to this emergency. Shortly after they arrived at the scene, the Chief of the Pecatonica Fire Department and another fire

3

fighter entered Bin 14 to rescue the defendant's employee who had collapsed. While in the bin, the fire chief collapsed and died.

After the fire chief died, the Fasco Location Manager, William J. Kirchner ("Kirchner"), and Randolph prepared and signed a confined space entry permit for the Stickle employee's entry of Bin 14 earlier on January 13, 1996. In preparing the confined space entry permit for January 13, 1996, Randolph was acting within the scope of his employment with defendant. Specifically, Randolph was authorized to sign confined space entry permits on behalf of defendant. In addition, Randolph was acting with the intent to benefit the defendant.

At the time he signed the January 13, 1996 confined space entry permit, Randolph knew that the permit contained several false statements, including that: (1) the permit had been issued at 8:00 a.m. on January 13, 1996; (2) a trained and equipped rescue team had been notified prior to the entry of Bin 14 on January 13, 1996; (3) trained attending persons with rescue equipment would be standing by during the entry; and (4) the atmosphere inside Bin 14 had been checked for safety and the oxygen content was greater than 19.5%.

On January 16, 1996, an investigator from the Occupational Safety and Health Administration ("OSHA") arrived at Fasco's elevator in Seward. The OSHA investigator asked Kirchner for copies of any confined space entry permits for entries into Bin 14. Kirchner gave the investigator copies of three permits, including a copy of the January 13, 1996 permit that was prepared after the fire chief's death.

7.     The parties agree that the guidelines promulgated by the United States Sentencing Commission, pursuant to Title 28, United States Code, Section 994, do not apply to this offense, pursuant to USSG § 1B1.9.

4

8.      Defendant's officers understand the charge to which it will plead guilty carries a maximum fine of $10,000, and a term of probation of up to five years as the Court may specify.

9.      The defendant's officers understand that in accord with federal law, Title 18, United States Code, Section 3013, upon entry of judgment of conviction, the defendant will be assessed $50 on the count to which it has pled guilty, in addition to any other penalty imposed. The defendant agrees to pay the special assessment of $50 at the time of sentencing with a cashier's check or money order made payable to the Clerk of the United States District Court.

10.     Defendant's officers understand that by pleading guilty it surrenders certain rights, including the following:

(a)     If defendant persisted in a plea of not guilty to the charges against it, it would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

(b)     If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and its attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt and that it was to consider each count separately.

(c)     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

(d)     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and its attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence in its own behalf. If the witnesses for defendant would not appear voluntarily, it could require their attendance through the subpoena power of the court.

(e)     Defendant understands that the statute of limitations (18 U.S.C. § 3282) prohibits any prosecution unless an indictment is found or the information is instituted within five years after the offense has been committed.

11.     Defendant's officers understand that by pleading guilty defendant is waiving all the rights set forth in the prior paragraph. Defendant's attorney has explained those rights to the defendant's officers, and the consequences of the defendant's waiver of those rights. Defendant's officers further understand that defendant is waiving all appellate issues that might have been available if defendant had exercised its right to trial. The defendant is also aware that Title 18, United State Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all of this, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined) on the grounds set forth in Section 3742 or on any ground whatsoever, in exchange for the concessions made by the United States in this Plea Agreement. The defendant also waives its right to challenge his sentence or the manner in which it was determined in any collateral attack,

6

including, but not limited to, a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

12.     Nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from the defendant.

13.     Defendant understands that the information and this Plea Agreement are matters of public record and may be disclosed to any party.

14.     Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against it, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing.

15.     This Plea Agreement is governed, in part, by Federal Rule of Criminal Procedure 11(e)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include the maximum available criminal fine of $10,000. Defendant further agrees to pay this $10,000 fine on the date of sentencing with a cashier's check or money order made payable to the Clerk of the United States District Court. In addition, the parties have agreed that the sentence imposed by the Court shall include at least a term of probation of three years with a special condition that the defendant perform community service within 30 days of the imposition of the sentence by paying $100,000 to the Pecatonica Fire Department to be used for the purchase of needed equipment and/or training, in memory of Chief Zimmerman. Other than the agreed terms of the fine, the minimum term of probation, and the special condition requiring community service in the form of a $100,000 payment to the Pecatonica Fire Department, the parties have agreed that the Court remains free to

7

impose any longer period of probation and any other special conditions of probation it deems appropriate. If the Court accepts and imposes the agreed sentence set forth above, the defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(e)(2) and (4). If, however, the Court refuses to impose the agreed sentence set forth herein, thereby rejecting the Plea Agreement, or otherwise refuses to accept the defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound thereto.

16.     The parties have also agreed that, in consideration for the concessions made by the United States in this Plea Agreement, defendant will enter into an agreement with the United States Department of Labor resolving OSHRC docket number 96-1044. In this agreement, defendant will admit to willful violations of the five safety regulations cited in the DOL "Invoice/Debt Collection Notice" issued July 11, 1996. Defendant will further agree to pay a total of $145,000 in fines for these violations. Defendant agrees to pay the $145,000 in fines within 30 days of the date of sentencing in this case. The terms of this resolution will be governed by a separate agreement between DOL and defendant which will be executed before the entry of defendant's guilty plea in the present case. If, however, the defendant does not enter into an agreement with DOL resolving OSHRC docket number 96-1044 or does not pay the required fine in the specified time, defendant will be deemed to have violated this Plea Agreement.

17.     After sentence has been imposed on the superseding information to which defendant pleads guilty as agreed herein, the government will move to dismiss the charge contained in the original indictment as to this defendant.

18.     Defendant's officers understand that its compliance with each part of this Plea Agreement extends throughout and beyond the period of his sentence, and failure to abide by any

8

term of the Plea Agreement is a violation of the Agreement. Defendant's officers further understand that in the event it violates this Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute the defendant not subject to any of the limits set forth in this Agreement, or to re-sentence the defendant. The defendant's officers understand and agree that in the event that this Plea Agreement is breached by the defendant, and the Government elects to void the Plea Agreement and prosecute the defendant, prosecutions for the charge contained in information in this case, and the charge contained in the original indictment in this case (making material false statements in a matter within the jurisdiction of a federal agency (18 U.S.C. § 1001)) may be commenced against the defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations for these prosecutions.

19.     Defendant's officers and defendant's attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

20.     Defendant agrees this Plea Agreement shall be filed and become a part of the record in this case.

21.    Defendant's officers acknowledge that they have read this Agreement and carefully reviewed each provision with his attorney. Defendant's officers further acknowledge that they understand and voluntarily accept each and every term and condition of this Agreement.


AGREED THIS DATE: _July 31, 2001_____


SCOTT R. LASSAR
United States Attorney

JAMES P. DEVINE
Attorney for Defendant
321 West State Street–Suite 400
Rockford, Illinois 61101
815-987-8900


SCOTT A. VERSEMAN
Assistant United States Attorney
308 West State Street–Room 300
Rockford, Illinois 61101
815-987-4444